# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 16-195V
Filed: November 13, 2020
PUBLISHED

| | |
|---|---|
| JAY P. BHATTACHARYYA and FARRAH E. BHATTACHARYYA, parents of J.B., a Minor,<br><br>     Petitioners,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>     Respondent. | Special Master Horner<br><br>Attorneys' Fees and Costs; Reasonable Basis; Reasonable Expert Costs; Vague Billing |

*Renee J. Gentry*, Vaccine Injury Clinic, George Washington Univ. Law School, Washington D.C, for petitioners.
*Heather Lynn Pearlman*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION REGARDING ATTORNEYS' FEES AND COSTS[1]

  Petitioners initiated this action on February 8, 2016. They alleged that their child, J.B., developed type one diabetes mellitus as a result of his February 14, 2013 diphtheria tetanus and acellular pertussis ("DTaP") vaccination. They moved to dismiss their claim on August 3, 2020, but now seek to recover attorneys' fees and costs totaling $61,627.51. (ECF Nos. 68, 70.) For the reasons discussed below, petitioners are awarded attorneys' fees and costs in the reduced amount of $42,700.61.

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

**I.     Procedural History**

Petitioners filed a statement of completion on February 15, 2017 and respondent filed his Rule 4 Report recommending against compensation on March 30, 2017. (ECF Nos. 30-31.) Thereafter, petitioners sought to further support their claim by filing an expert report by microbiologist Frank Ruscetti, PhD. (Ex. 14.)[2]

Special Master Millman raised several issues with Mr. Ruscetti's first report during a status conference held on October 13, 2017. (ECF No. 37.) A supplemental report by Mr. Ruscetti was filed on April 19, 2018. (Ex. 39.)

Respondent subsequently filed a responsive expert report by immunologist Penelope Morel, M.D. (Ex. A.) Petitioners filed a third expert report by Mr. Ruscetti on January 25, 2019. (Ex. 40.) Respondent then filed a second report by Dr. Morel and petitioners filed a fourth and ultimately final report by Mr. Ruscetti on May 28, 2019. (Ex. 51; Ex. NNN.)

This case was subsequently reassigned to me and respondent filed a third report by Dr. Morel. (ECF No. 58; Ex. OOO.) Thereafter, the parties indicated the case was ripe for a hearing. (ECF No. 63.) However, petitioners later contacted my chambers on July 27, 2020, to indicate that they would not be relying on Mr. Ruscetti and intended to move to strike the previously filed reports. (Informal Communication, 7/27/2020.)

Prompted to file a report by a different expert, petitioners instead moved to dismiss their claim. (ECF No. 68.) Petitioners indicated that "[a]n investigation of the facts and science supporting has demonstrated to the Petitioner that they will be unable to prove that [they are] entitled to compensation in the Vaccine Program," and that "to proceed any further would be unreasonable and would waste the resources of the Court, the respondent, and Vaccine Program." (*Id.* at 1.)

On August 22, 2020, petitioners moved for an award of attorneys' fees and costs. (ECF No. 70.) Petitioners requested $44,957.45 in attorneys' fees, $16,270.06 in attorneys' costs, and $400 in personal litigation expenses reflecting the petition filing fee. (*Id.* at 1.) Notably, the billing invoices submitted with respect to Mr. Ruscetti's reports reflect only work conducted from September 11, 2018 to May 24, 2019. (ECF No. 70-1, pp. 29-30.) This would necessarily be for work performed in preparation of petitioners' third and fourth expert reports.

Petitioners filed no memorandum in support of their application and instead asked only that the special master "award all reasonable fees and costs." (ECF No. 70, p. 1.) Respondent filed his response on September 3, 2020, indicating that "[r]espondent defers to the court regarding whether the statutory requirements for an

---

[2] This report is labeled on the docket as being coauthored by "Ruscetti and Mikovits." (ECF No. 35.) According to Mr. Ruscetti, he is a partner in a consulting firm called "M.A.R.C., Inc." (Ex 14, p. 1.) Judy Mikovits is also a partner in M.A.R.C. and the two have coauthored reports in a number of prior cases. In this case, although petitioners' expert reports were filed under the M.A.R.C., Inc. letterhead, and the initial opinion was docketed as a report by "Ruscetti and Mikovits," all of the reports filed in this case are signed solely by Mr. Ruscetti. (Exs. 14, 39, 40, 51.) This decision reserves the use of the title "Dr." to refer to medical doctors.

2

award of attorneys' fees and costs are met in this case." (ECF No. 72, p. 2.) Respondent also requested that I exercise my discretion to determine the reasonableness of any award of attorneys' fees and costs. (*Id.* at 3.) No reply was filed. Accordingly, this motion is now ripe for resolution.

## II. Good Faith and Reasonable Basis

Section 15(e)(1) of the Vaccine Act allows the special master to award "reasonable attorneys' fees, and other costs." § 300aa–15(e)(1)(A)–(B). Petitioners are entitled to an award of reasonable attorneys' fees and costs if they receive compensation under the Vaccine Act, or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).

"Good faith" is a subjective standard. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred. *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). The standard for finding good faith has been described as "very low," and findings that a petition lacked good faith are rare. *Heath v. Sec'y of Health & Human Servs.*, No. 08-86V, 2011 WL 4433646, *2 (Fed. Cl. Spec. Mstr. Aug. 25, 2011). In this case, petitioners' good faith is not challenged. (ECF No. 72.)

In contrast, the question of whether a claim has a "reasonable basis" is objective and must be affirmatively established by the petitioner. *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011). The special master looks "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (citing *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The claim of a "reasonable basis" must be based on more than "unsupported speculation." *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). Here, respondent has raised no specific objection based on any lack of reasonable basis, but instead defers to my determination. (ECF No. 72.)

The reasonable basis determination is "an objective inquiry unrelated to counsel's conduct." *Simmons v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 579, 582 (2016), *aff'd*, 875 F. 3d 632, 636 (Fed. Cir. 2017). However, a special master may assess "a variety of other factors," including "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282 (2018); *accord Cottingham v. Sec'y of Health & Human Servs.*, 971 F.3d 1337 (Fed. Cir. 2020).

Although type one diabetes is generally accepted to be an autoimmune condition likely to have an environmental trigger, cases alleging vaccine-caused type one diabetes do not have a track record of success in this program. *E.g. Hennessey v.*

3

*Sec'y of Dep't of Health & Human Servs.,* No. 01-190V, 2009 WL 1709053 (Fed. Cl. May 29, 2009), *review denied, decision aff'd*, 91 Fed. Cl. 126 (2010); *Crutchfield v. Sec'y of Health & Human Servs.*, No. 09-0039V, 2014 WL 1665227 (Fed. Cl. Spec. Mstr. Apr. 7, 2014), *aff'd,* 125 Fed. Cl. 251 (2014); *Garrett v. Sec'y of Health & Human Servs.,* No. 14-17V, 2014 WL 3725862 (Fed. Cl. Spec. Mstr. July 7, 2014); *Heinze v. Sec'y of Health & Human Servs.,* No. 14-319V, 2015 WL 798143 (Fed. Cl. Spec. Mstr. Jan. 27, 2015); *Tait on behalf of D.T. v. Sec'y of Health & Human Servs.*, No. 15-1415V, 2016 WL 877849 (Fed. Cl. Spec. Mstr. Feb. 16, 2016); *Tait on Behalf of J.T. v. Sec'y of Health & Human Servs.,* No. 15-1414V, 2016 WL 877952 (Fed. Cl. Spec. Mstr. Feb. 16, 2016); *Turner v. Sec'y of Health & Human Servs.,* No. 15-1073V, 2016 WL 7665432 (Fed. Cl. Spec. Mstr. Dec. 16, 2016); *Dorris v. Sec'y of Health & Human Servs.,* No. 14-322V, 2017 WL 2417323 (Fed. Cl. Spec. Mstr. May 9, 2017). Significantly, however, respondent's expert in this case acknowledged that despite study regarding the causes of type one diabetes, "[n]o clear environmental factors have emerged to date," suggesting that a degree of novelty remains regarding our understanding of the autoimmune basis for type one diabetes. (Ex. OOO, p. 2.)

In that context, the track record of prior cases does not necessarily foreclose petitioners from feasibly pursuing a case such as this on the basis that vaccination could nonetheless be shown to be a relevant environmental factor leading to type one diabetes. The Federal Circuit has stressed that "the purpose of the Vaccine Act's preponderance standard is to allow the finding of causation in a field bereft of complete and direct proof of how vaccines affect the human body." *Althen v. Sec'y of Health & Human Servs.,* 418 F.3d 1274, 1280 (Fed. Cir. 2005). In that regard, special masters have previously observed that "[t]o rule that no type 1 diabetes case could ever succeed in the Vaccine Program would discourage attorneys from pursuing new scientific theories that could ultimately prove successful, contrary to the purpose of the Vaccine Act." *Garrett v. Sec'y of Health & Human Servs.,* No. 14-17V, 2014 WL 6237497, at *5 (Fed. Cl. Spec. Mstr. Oct. 27, 2014).

Significant to this case, there is no question as to J.B.'s correct diagnosis and respondent's expert further agreed that the relevant anti-islet autoantibodies that suggest an autoimmune basis for type one diabetes were found in J.B. at the time of his diagnosis. (Ex. A, p. 3.) It was also undisputed in this case that overt onset of J.B.'s diabetes was temporally proximate to his DTaP vaccination. (Ex. A, p. 4.) Although prior decisions, such as *Crutchfield, supra*, have explained that the mechanism of injury in type one diabetes, damage to islet cells, requires a longer term subclinical phase of cumulative effect before the injury manifests, petitioners' expert did opine that J.B.'s condition was related to multiple vaccinations and that the specific vaccine at issue in this case constituted in effect a significant aggravator of J.B.'s condition rather than an initiating cause. (Ex. 14, p. 7.)

The competing expert presentations in this case focused largely on petitioners' presentation of a medical theory specifically linking J.B.'s DTaP vaccination to his injury. Especially in light of petitioners' voluntary dismissal and acknowledgment that they ultimately would not rely on Mr. Ruscetti's opinion, it is unsurprising that Mr. Ruscetti's opinion was not likely to provide preponderant evidence of vaccine-causation. However, for purposes of establishing reasonable basis, petitioners' need only provide

4

"more than a mere scintilla" of evidence. *Cottingham,* 971 F.3d at 1346. In this case, separate and apart from the specific value of Mr. Ruscetti's opinion in itself, petitioners filed a significant amount of literature. None of this literature directly implicates the DTaP vaccination in causing type one diabetes, but effective expert opinion can rely on circumstantial evidence.

Similar to this case, in the above-cited *Garrett* case the special master found that there was enough evidence in the medical records supporting the type one diabetes diagnosis and timing of onset to allow petitioners a reasonable basis to initially file their petition and attempt to prove their claim with added expert support. 2014 WL 6237497, at *5. Attorneys' fees and costs have also been paid in type one diabetes cases that were more recently voluntarily dismissed. *Dorris v. Sec'y of Health & Human Servs.*, No. 14-322V, 2017 WL 3806398 (Fed. Cl. Spec. Mstr. Aug. 3, 2017). Because this case was truncated by petitioners' voluntary dismissal, I still have significant questions regarding the value of the cited literature as well as Mr. Ruscetti's ability to effectively or persuasively coalesce the circumstantial evidence supporting his opinion. However, respondent has not articulated any specific objection relative to reasonable basis and I am not otherwise prepared to conclude on the instant record that the facts of this case, coupled with the medical literature filed, fail to provide even the bare minimum "more than a mere scintilla" of evidence required to find a reasonable basis.[3]

### III.     Reasonable Costs

Notwithstanding the above, reasonable basis can be lost as a case proceeds. *R.K. v Sec'y of Health & Human Servs.*, 760 Fed. Appx. 1010, 1012 (Fed. Cir. 2019). Moreover, counsel has a duty to monitor expert costs. *Simon v. Sec'y of Health & Human Servs.*, No, 05-941V, 2008 WL 623833, at *2 (Fed. Cl. Spec. Mstr. Feb. 21, 2008). Accordingly, the fact that petitioners initially had a reasonable basis to file this case does not mean that all expert costs were reasonably incurred. "One test of the 'reasonableness' of a fee or cost item is whether a hypothetical petitioner, who had to use his own resources to pay his attorney for Vaccine Act representation would be willing to pay for such expenditure." *Hardy v. Sec'y of Health & Human Servs.*, No. 08-108V, 2016 WL 4729530 (Fed. Cl. Spec. Mstr. Aug. 16, 2016) (citing *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319819, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009); *Sabella v. Sec'y of Health & Human Servs.*, No. 02-1627, 2008 WL 4426040, at *28 (Fed. Cl. Spec. Mstr. Aug. 29, 2008)). In this case, I find that the requested expert costs were not reasonably incurred. Two factors are paramount here.

First, given the quantity of reports filed by petitioners in this case, and given that the basis and quality of those reports was evident from the very first report, it appears that petitioners came to the conclusion that they would not rely on Mr. Ruscetti's reports

---

[3] In a similar case involving type one diabetes, relative to a different vaccine, but filed by the same counsel, relying on the same expert, and likewise voluntarily dismissed at about the same time, respondent agreed that the statutory requirements for an award of attorneys' fees and costs were met. *Wilson v. Sec'y of Health & Human Servs.*, No. 17-1349V, Slip Op (Fed. Cl. Spec. Mstr. Nov. 13, 2020). The decision addressing attorneys' fees and costs in *Wilson* is being filed on the same date as this decision.

only belatedly.[4]  For example, one shortcoming in petitioners' case apparent from Mr. Ruscetti's first report is his lack of qualification to speak to some of the pertinent issues in this case.  Mr. Ruscetti describes his experience as a microbiologist as relating to "immunobiology, retrovirology, stem cell biology and immune response" and cites experience with autoimmune conditions generally.  (Ex. 14, p. 1.)  However, he is not a medical doctor and his curriculum vitae evidences no qualification or specialist understanding relative to type one diabetes.  (Ex. 50.)  Yet his initial report sought to bolster his opinion with a discussion of an interrelationship between type one diabetes and other comorbidities, including a potential relationship between hyperthyroidism and hypoglycemia as well as the relationship between type one diabetes and the gut biome.  (Ex. 14, pp. 4-5.)  He also purported to rule out any other cause of J.B.'s diabetes.  (*Id.* at 7.)  It is not apparent that he is qualified to so opine and his supplemental reports did not, and could not, cure that deficiency.

Moreover, both Special Master Millman's October 13, 2017 status conference as well as respondent's filing of Dr. Morel's initial report should have served to put petitioners on notice regarding the significant issues in the case prior to their commission of Mr. Ruscetti's third and fourth reports.  In her first report, respondent's expert opined that J.B.'s diabetes was likely the result of a combination of factors, including a family history of autoimmune disease, a prior history of gastrointestinal difficulties, and significant prior treatment with antibiotics.  (Ex. A, p. 5.)  Though not wholly ignored, Mr. Ruscetti's two subsequent reports did not significantly engage with the medical significance of these factors being present in J.B.'s own history, instead characterizing them as attempts to direct attention away from the theoretical aspects of his own opinion.  (Ex. 40, pp. 1-2; Ex. 51, p. 1.)  And, again, it is not evident Mr. Ruscetti would be fully qualified to discuss the medical significance of J.B.'s own history.  Despite this, petitioners' motion contained no explanation of why Mr. Ruscetti's third and fourth reports were reasonably necessary in light of the overall history of this case. (ECF No. 70.)

Second, and relatedly, by the time Mr. Ruscetti performed the work necessary to complete the two later reports for which petitioners seek reimbursement, prior decisions had been issued that were highly critical both of the quality and credibility of Mr. Ruscetti's work as coauthor with Judy Mikovits.  *E.g. McCabe v. Sec'y of Health & Human Servs.*, No. 13-570V, 2018 WL 3029175, at *14-18, *20-22, *32-33 (Fed. Cl. Spec. Mstr. May 17, 2018) (enumerating substantive deficiencies with coauthored reports); *Dominguez v. Sec'y of Health & Human Servs.*, No. 12-378V, 2018 WL 3028975, at *5-6 (Fed. Cl. Spec. Mstr. May 24, 2018) (describing coauthored reports as "riddled with errors, exaggerations, and false statements"); *Rogero v. Sec'y of Health & Human Servs*, No. 11-770V, 2017 WL 4277580 (Fed. Cl. Spec. Mstr. Sept. 1, 2017) (discussing Ms. Mikovits' dubious use of medical literature, noting that her testimony "often veer[ed] into opinions concerning medical disciplines in which she was wholly unqualified" and noting the coauthored report to be "vague").  While criticisms specific

---

[4] I stress here that the fact of petitioners' ultimate affirmative acknowledgement that they could not reasonably rely on Mr. Ruscetti's reports or continue their claim does not in itself affect the outcome.  Had petitioners not recognized the limitations of their own expert presentation, they would only have run the risk of incurring further fees and costs that may not have been compensated.

to Ms. Mikovits's individual testimony or conduct cannot be imputed to Mr. Ruscetti, these prior decisions reflect that Mr. Ruscetti participated as coauthor on reports that contained substantial failures going to both credibility and reliability.

By way of example specific to this case, Mr. Ruscetti's first report made the unsupported claim without any citation that "[s]everal publications have shown that an increased vaccine induced immune overload has caused the epidemic increase in [type one diabetes]." (Ex. 14, p. 6.) That this specific claim was unsupported was both material and suspect as these publications, if they were available and accurately described, would have gone to the heart of the issues litigated in the case. Special Master Millman specifically ordered Mr. Ruscetti to substantiate or correct the claim with citations to the referenced literature. (ECF No. 37.) Yet, despite filing three subsequent reports, I see nowhere in the record of this case where Mr. Ruscetti ever substantiated or corrected his apparent misstatement indicating that there was literature directly on point. Respondent's expert later specifically refuted this assertion, discussing the suspected reasons, not including vaccination, for the increase in incidences of type one diabetes. (Ex. A, pp. 3-4.) Mr. Ruscetti's initial statement, which, again, was material, appears to have been unreliable at best and intentionally misleading at worst.

Accordingly, it remains clear that the above criticisms are fairly leveled at Mr. Ruscetti in his individual capacity in addition to his role as coauthor with Ms. Mikovits. Notably, Mr. Ruscetti stressed in his fourth and final report that he opined in this case, at least in part, "as I have in essentially every report I have written in the four years I have worked in this program." (Ex. 51, p. 2.) In several later decisions, other special masters have specifically reduced compensation for these reports coauthored by Mr. Ruscetti based on their very poor quality. *E.g.*, *Barker v. Sec'y of Health & Human Servs.*, No. 16-1554V, 2019 WL 4648912, at *6 (Fed. Cl. Spec. Mstr. Aug. 27, 2019); *Bertolucci v. Sec'y of Health & Human Servs.,* No. 15-1573V, 2019 WL 4256974 (Fed. Cl. Spec. Mstr. Aug. 28, 2019).

For these reasons, I do not find that the expert costs requested in this case, which were limited to work performed on two supplemental reports completed in late 2018 and 2019, were reasonably incurred. This results in a reduction of $16,200.00. The remainder of the requested costs, including the $400 petition filing fee incurred directly by petitioners, are documented and reasonable.

### IV. Reasonable Attorneys' Fees

Upon review, the requested hourly rates are in accord with what has previously been awarded and I also find the overall hours billed to be largely reasonable. However, some issues exist with the billing entries attributable to Mr. Shoemaker which have previously been noted by other special masters – namely, the vagueness of his entries and block billing. *See Barry v. Sec'y of Health & Human Servs.*, No. 12-39V, 2016 WL 6835542 (Fed. Cl. Spec. Mstr. Oct. 25, 2016) (reducing a fee award by ten percent due to vague billing entries); *Mostovoy v. Sec'y of Health & Human Servs.*, No. 02-10V, 2016 WL 720969 (Fed. Cl. Spec. Mstr. Feb. 4, 2016). It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the

7

amount requested is reasonable. *Bell v. Sec'y of Dep't of Health & Human Servs.*, 18 Cl. Ct. 751, 760 (1989); *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468 (Fed. Cl. Spec. Mstr. June 27, 2009). Petitioners bear the burden of documenting the fees and costs claimed. *Rodriguez*, 2009 WL 2568468, at *8.

In this case, a significant portion of Mr. Shoemaker's billing entries confirm nothing more than that he was exchanging e-mails with various people. Many additional entries reflect that he was "reviewing" unspecified orders, pleadings, or other documents. These entries leave me unable to determine whether the time billed for emailing and document review was reasonable, or necessary at all. Accordingly, I reduce the amount of the fees attributable to Mr. Shoemaker's work by ten percent, resulting in a reduction of $2,726.90. The remainder of the hours appear reasonable.

## V.     Conclusion

In accordance with the Vaccine Act, 42 U.S.C. § 300aa-15(e) (2012), I have reviewed the billing records and costs in this case and finds that petitioners' request for fees and costs, other than the reductions delineated above, is reasonable. Accordingly, petitioners' motion is **GRANTED** and petitioners are awarded attorneys' fees and costs in a reduced amount calculated as follows:

|  | **Requested** | **Adjustment** | **Awarded** |
| --- | --- | --- | --- |
| Attorneys' Fees | $40,787.45 | (less $2,726.90) | $38,060.55 |
| Student Attorneys' Fees | $4,170.00 | (no reduction) | $4,170.00 |
| Attorneys' Costs | $16,270.06 | (less $16,200.00) | $70.06 |
| Petitioners' Costs | $400 | (no reduction) | $400 |
|  |  | **Total:** | **$42,700.61** |

**I award a total of $42,700.61 as follows:**

- **a lump sum in the amount of $42,300.61 representing reimbursement for petitioners' attorneys' fees and costs, in the form of a check payable to petitioners and their attorney, Ms. Rene J. Gentry; and**

- **a lump sum in the amount of $400.00, representing reimbursement for petitioners' costs, in the form of a check payable to petitioners.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court shall enter judgment in accordance herewith.[5]

---

[5] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master
